UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DEBRA SISSON,

                                              Plaintiff,

v.                                                                    3:14-CV-00966

                                                                          (LEK/TWD)

CAROLYN W. COLVIN,
Commissioner of Social Security
                                              Defendant.
_____

APPEARANCES:                              OF COUNSEL:

LACHMAN & GORTON                          PETER A. GORTON, ESQ.
*Counsel for Plaintiff*
1500 E. Main Street
P.O. Box 89
Endicott, New York 13761

HON. RICHARD S. HARTUNIAN                 DAVID L. BROWN, ESQ.
United States Attorney for the            Special Assistant United States Attorney
  Northern District of New York
*Counsel for Defendant*
Room 218
James T. Foley U.S. Courthouse
Albany, New York 12207

OFFICE OF GENERAL COUNSEL                 STEPHEN P. CONTE, ESQ.
Social Security Administration            Chief Counsel, Region II
26 Federal Plaza, Room 3904
New York, New York 10278

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

<u>**DECISION and ORDER**</u>

        This matter is before the Court pursuant to 28 U.S.C. § 636(b) and Northern District of

New York Local Rule 72.3.  The parties have consented to the jurisdiction of the undersigned.

(Dkt. No. 24.)  This case has proceeded in accordance with General Order 18 of this Court which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Both parties have filed briefs.  Oral argument was not heard.  For the reasons discussed below, the Court affirms the Commissioner's decision.

## I.     BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was born on January 3, 1971, and is currently 44 years old.  (Administrative Transcript at 157.[1])  She received her general equivalency degree ("GED") in 1988 and received vocational training in real estate, also in 1988.  (T. at 64.)  Plaintiff has a driver's license but prefers not to drive unless absolutely necessary.  (T. at 84-85.)  Plaintiff has been employed in a number of jobs, including after-hours janitorial work, working the assembly line at a video game packager, office work, cashier, in production for a newspaper, and hotel maid.  (T. at 64-71.) Plaintiff alleges disability due to seizure disorder, depression and bipolar disorder.  (T. at 196.)

Plaintiff applied for disability insurance benefits on November 17, 2011, and for Social Security Income ("SSI") on December 1, 2011.  (T. at 13.)  Both applications were denied on March 7, 2012.  *Id.*  On March 16, 2012, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  *Id.*  The hearing was held on March 6, 2013, before ALJ Barry E. Ryan.  (T. at 28.)  On April 9, 2013, the ALJ issued a decision finding that Plaintiff was not disabled.  *Id.* The ALJ's decision became the final decision of the Commissioner when the Appeals Council

---

[1]      The Administrative Transcript is found at Dkt. No. 11.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the numbers assigned by the Court's CM/ECF electronic filing system.

denied Plaintiff's request for review on June 11, 2014.  (T. at 1, 5.)  Plaintiff commenced this

action on August 1, 2014.  (Dkt. No. 1.)

## II.    APPLICABLE LAW

### A.    Standard for Benefits

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI

disability benefits must establish that he or she is "unable to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A) (2006).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such
> severity that he is not only unable to do his previous work but cannot,
> considering his age, education, and work experience, engage in any
> other kind of substantial gainful work which exists in the national
> economy, regardless of whether such work exists in the immediate
> area in which he lives, or whether a specific job vacancy exists for
> him, or whether he would be hired if he applied for work.

§ 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social

Security Administration ("SSA") promulgated regulations establishing a five-step sequential

evaluation process to determine disability.  20 C.F.R. § 416.920(a)(4) (2013).  Under that five-

step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful
> activity; (2) whether the claimant has a severe impairment or
> combination of impairments; (3) whether the impairment meets or
> equals the severity of the specified impairments in the Listing of
> Impairments; (4) based on a "residual functional capacity"
> assessment, whether the claimant can perform any of his or her past
> relevant work despite the impairment; and (5) whether there are

> significant numbers of jobs in the national economy that the claimant
> can perform given the claimant's residual functional capacity, age,
> education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014.)  "If at any step a finding of disability or

non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thomas*, 540

U.S. 20, 24 (2003).

The plaintiff-claimant bears the burden of proof regarding the first four steps.  *Kohler v.

Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir.

1996)).  If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the

defendant-Commissioner at the fifth step to prove that the plaintiff-claimant is capable of

working.  *Id.*

**B.**     **Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the

correct legal standards were applied and whether substantial evidence supports the decision.

*Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v.

Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985

(2d Cir. 1987)).  A reviewing court may not affirm an ALJ's decision if it reasonably doubts

whether the proper legal standards were applied, even if the decision appears to be supported by

substantial evidence.  *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the

determination of whether there is substantial evidence in the record to support the decision.  42

U.S.C. § 405(g) (2012); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  An ALJ must set

forth the crucial factors justifying his findings with sufficient specificity to allow a court to

determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010);[2] *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972); *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## III.    THE ALJ'S DECISION

Here, the ALJ found that the Plaintiff was not disabled. (T. at 10.) This conclusion was determined at Step Four of the five-step analysis. (T. at 28.) Specifically, the ALJ found that the

---

[2]    On Lexis, this published opinion is separated into two documents. The first is titled *Roat v. Barnhart*, 717 F. Supp. 2d 241, 2010 U.S. Dist. LEXIS 55442 (N.D.N.Y. June 7, 2010). It includes only the district judge's short decision adopting the magistrate judge's report and recommendation. The second is titled *Roat v. Comm'r of Soc. Sec.*, 717 F. Supp. 2d 241, 2010 U.S. Dist. LEXIS 55442 (N.D.N.Y. June 7, 2010). It includes only the magistrate judge's report and recommendation. Westlaw includes both the district court judge's decision and the magistrate judge's report and recommendation in one document, titled *Roat v. Barnhart*, 717 F. Supp. 2d 241 (N.D.N.Y. 2010). The Court has used the title listed by Westlaw.

Plaintiff worked after the alleged disability onset date, but the work activity did not rise to the level of substantial gainful activity.  (T. at 16.)  Next, the ALJ found that Plaintiff's severe impairments were a seizure disorder, bipolar disorder-NOS, and borderline intellectual functioning.  *Id.*  The ALJ further found that none of Plaintiff's impairments met or medically equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (T. at 18.)  The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work, and specifically that she is able to lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday.  (T. at 21.)  The ALJ said Plaintiff must avoid workplace hazards such as unprotected heights, moving mechanical parts, and operating heavy machinery.  *Id.*  In addition, the ALJ found that Plaintiff retains the ability to understand and follow simple instructions and directions, perform simple tasks with supervision and independently, maintain attention and concentration for simple tasks, regularly attend to a routine and maintain a schedule, relate to and interact appropriately with others to the extent necessary to carry out simple tasks, and handle reasonable levels of simple, repetitive work-related stress in that she is able to make decisions directly related to the performance of simple tasks in a position with consistent job duties that do not require her to supervise or manage the work of others.  *Id.*

Based on these determinations, the ALJ found that Plaintiff is capable of performing past relevant work as a cashier because it does not require the performance of work-related activities precluded by her RFC.  (T. at 26.)  Despite a determinative finding at Step Four, the ALJ also completed the five-step analysis by finding that other jobs exist in the national economy that

Plaintiff could perform, and therefore found she is not disabled and not entitled to disability insurance benefits or supplemental security income.  (T. at 26, 28.)

## IV.    THE PARTIES' CONTENTIONS

Plaintiff claims that the ALJ erred in determining Plaintiff's RFC because (1) he failed to properly give weight to the treating source opinion; (2) the limitations are not supported by substantial evidence; and (3) the ALJ did not properly assess Plaintiff's seizures.  (Dkt. No. 14.) Plaintiff also claims that the ALJ erred by failing to consult with a vocational expert.  *Id.*

Defendant contends that the ALJ's decision applied the correct legal standards and is supported by substantial evidence and thus should be affirmed.  (Dkt. No. 20.)

## V.    DISCUSSION

Plaintiff asserts that remand is warranted because the ALJ erred in his RFC determination and in failing to consult with a vocational expert.  For the reasons discussed below, the Court finds the ALJ applied correct legal standards and his decision is supported by substantial evidence.  As such, remand is unnecessary.

### A.    The RFC Determination

Plaintiff argues that the ALJ erred in determining her RFC.  Specifically, Plaintiff argues that the ALJ did not properly assess the medical opinions to which he gives weight, especially the treating source opinion.  (Dkt. No. 14 at 10.[3])  Plaintiff further argues that the limitations in her RFC are not supported by substantial evidence.  (Dkt. No. 14 at 10-20.)  Plaintiff also argues

---

[3]    Page references to documents identified by docket number are to the numbers assigned by the Court's CM/ECF electronic docketing system.

that the ALJ discounted the effect of her seizures and failed to properly take third-party sources into account.  (Dkt. No. 14 at 18-21.)  The Court disagrees.

A claimant's RFC is the most she or he can do despite her or his limitations.  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis.  A regular and continuing basis means eight hours a day, for five days a week, or an equivalent work schedule.  *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing *Melville v. Apfel*, 198 F.3d 45, 42 (2d Cir. 1999) (quotations omitted)).

It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.  20 C.F.R. § 404.1546(c).  In determining RFC, the ALJ can consider a variety of factors including a treating physician's or examining physician's observations of limitations, the claimant's subjective allegations of pain, physical and mental abilities, as well as the limiting effects of all impairments even those not deemed severe.  20 C.F.R. § 404.1545(a).  Age, education, past work experience, and transferability of skills are vocational factors to be considered.  *Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999).  Physical abilities are determined by evaluation of exertional and nonexertional limitations.  Exertional limitations include claimant's ability to walk, stand, lift, carry, push, pull, reach, and handle.  20 C.F.R. § 404.1569a(b).

The ALJ "is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record."  *Genier v. Astrue*, 606 F.3d 46, 49 (2010).  Once the ALJ has

resolved a claimant's complaints of pain, he can then evaluate exertional and nonexertional limitations. *Lewis v. Apfel*, 62 F. Supp. 2d 648, 658 (N.D.N.Y. 1999).

The RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations. *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004) (citation omitted). In assessing RFC, the ALJ's findings must specify the functions a plaintiff is capable of performing; conclusory statements regarding plaintiff's capacities are not sufficient. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010) (citation omitted). RFC is then used to determine the particular types of work a claimant may be able to perform. *Whittaker*, 717 F. Supp. 2d at 440.

Here, the ALJ determined that Plaintiff retained the RFC to perform light work finding:

> [Plaintiff] is able to lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. [Plaintiff] must avoid workplace hazards such as unprotected heights, moving mechanical parts, and operating heavy machinery. Additionally, [Plaintiff] retains the ability to understand and follow simple instructions and directions, perform simple tasks with supervision and independently, maintain attention and concentration for simple tasks, regularly attend to a routine and maintain a schedule, relate to and interact appropriately with others to the extent necessary to carry out simple tasks, and handle reasonable levels of simple, repetitive work-related stress in that she is able to make decisions directly related to the performance of simple tasks in a position with consistent job duties that do not require her to supervise or manage the work of others.

(T. at 21.)

In reaching this determination, the ALJ gave "significant weight" to the opinions of Joseph Vilogi, M.D., Sarah Long, Ph.D., state psychologist L. Blackwell, and Cheryl Loomis, Ph.D., "due to their programmatic expertise and the relative consistency of their opinions with the overall evidence." (T. at 25.) The ALJ gave "very little weight" to Plaintiff's treating mental

health practitioners, Nalini Naik, M.D., and Sarah Harding, L.C.S.W., because their opinions "are not supported by explanation and are not consistent with the overall evidence or the claimant's mental health treatment notes." (T. at 25.)

### 1.    Plaintiff's RFC and the Treating Physician Rule

Plaintiff argues that the ALJ did not give proper weight to the opinion of the treating medical sources. After careful consideration, the Court disagrees and finds the ALJ properly considered the opinion of the treating sources.

The medical opinions of a claimant's treating physician are generally given more weight than those of other medical professionals. "If . . . a treating source's opinion . . . is well-supported by medically acceptable clinical and laboratory techniques and is not inconsistent with other substantial evidence. . . [it] will [be] give[n] controlling weight." 20 C.F.R. § 404.1527(c)(2). Medically acceptable techniques include consideration of a patient's report of complaints, or history, as an essential diagnostic tool. *Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003). Generally, the longer a treating physician has treated the claimant and the more times the claimant has been seen by the treating source, the more weight the Commissioner will give to the physician's medical opinion. *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (citing 20 C.F.R. § 404.1527(c)(2)(i)).

An opinion from a treating source that the claimant is disabled cannot itself be determinative. *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). However, a lack of specific clinical findings in the treating physician's report is not, by itself, a reason to justify an ALJ's failure to credit the physician's opinion. *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998) (citing *Schaal v. Apfel*, 134 F.3d 496 (2d Cir. 1998)).

"An ALJ who refuses to give controlling weight to the medical opinion of a treating physician must consider various factors to determine how much weight to give to the opinion." *Halloran v. Barnhart,* 362 F.3d 28, 32 (2d Cir. 2004) (citation omitted). This analysis must be conducted to determine what weight to afford any medical opinion. 20 C.F.R. § 404.1527(c). This is necessary because the ALJ is required to evaluate every medical opinion received. *Id.; see also Zabala v. Astrue*, 595 F.3d 402 (2d Cir. 2010) (finding that the ALJ failed to satisfy the treating physician rule when he discounted a report because it was incomplete and unsigned). These factors include: (1) the length of the treatment relationship and frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the medical evidence in support of the opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)-(6). Failure to conduct this analysis is considered failure to apply the correct legal standard and is a ground for reversal. *Schaal*, 134 F.3d at 505.

Generally, the opinion of the treating physician will not be afforded controlling weight when the treating physician issued opinions that were not consistent with those of other medical experts and is contradicted by other substantial evidence in the record. *Halloran*, 362 F.3d at 32; 20 C.F.R. § 404.1527(c)(2); *Snell*, 177 F.3d at 133 ("When other substantial evidence in the record conflicts with the treating physician's opinion . . . that opinion will not be deemed controlling. And the less consistent that opinion is with the record as a whole, the less weight it will be given."). Other findings, including the ultimate finding of whether the claimant is disabled, are reserved for the Commissioner. *Snell,* 177 F.3d at 133.

The Regulations require the Commissioner's notice of determination or decision to "give good reasons" for the weight given a treating source's opinion. 20 C.F.R. § 404.1527(c)(2). This is necessary to assist the court's review of the Commissioner's decision and it "let[s] claimants understand the disposition of their cases." *Halloran*, 362 F.3d at 33 (citing *Snell*, 177 F.3d at 134). Failure to provide "good reasons" for not crediting the opinion of a claimant's treating physician is a ground for remand. *Snell*, 177 F.3d at 133; *Halloran*, 362 F.3d at 32-33. However, remand is unnecessary where application of the correct legal standard could lead to only one conclusion. *Schaal*, 134 F.3d at 504.

Here, the ALJ gave "very little weight" to the opinions of Plaintiff's treating mental health care providers, Dr. Naik and Ms. Harding. (T. at 25.) Absent contrary evidence in the record, treating source opinions such as these generally would be given controlling weight. Here, however, the ALJ properly provided good reasons for not crediting the opinions of Dr. Naik and Ms. Harding saying, "The opinions in this report are not supported by explanation and are not consistent with the overall evidence or the Plaintiff's mental health treatment notes." (T. at 25.)

Dr. Naik and Ms. Harding opined in their report that Plaintiff suffers from medium impairments for all factors pertaining to concentration and persistence and suffers from marked impairments for all factors regarding interaction with others and adaptation/stress. (T. at 673-675.) However, these medical opinions are not consistent with those of several other medical experts, including Dr. Long, state psychologist Blackwell, and Dr. Loomis. (T. at 298, 322, 798.) Dr. Naik's opinion that Plaintiff had medium limitations in her ability to maintain concentration, attention and a regular schedule was contradicted by Dr. Long's assessment that Plaintiff could maintain a regular schedule. (T. at 298, 673.) Blackwell similarly opined that Plaintiff is "able

to understand, execute, and remember simple instructions and work-like procedures" and "able to sustain a normal workday and work week," which also contradicts Dr. Naik's opinion. (T. at 322, 673.) Dr. Naik's opinion that Plaintiff had marked limitations in interacting with others was contradicted by Dr. Loomis' report that indicated no such limitations, and by his own treatment notes. (T. at 624, 653, 674, 798.) A treating physician's opinion does not sustain controlling weight when it is contradicted by substantial evidence in the record, so the ALJ did not err in failing to give the treating sources' opinions controlling weight here. *See Halloran*, 362 F.3d at 32.

By way of further example, Dr. Long found Plaintiff neat and well groomed, cooperative, and with appropriate eye contact. (T. at 297.) Plaintiff was coherent and goal oriented, her speech and thought content were appropriate, but her insight and judgment were poor. (T. at 297-98.) Still, she was well oriented and her sensorium was clear. (T. at 298.) Dr. Long found Plaintiff compliant with her medications and psychotherapy sessions which gave her a good prognosis. (T. at 300.) Dr. Long noted that Plaintiff could follow and understand simple instructions, and maintain attention, concentration, and a regular schedule. (T. at 298.)

Dr. Loomis also found Plaintiff to be normal in general appearance, with normal speech and language, and thought processing. (T. at 796.) Although her mood and affect were not normal, Plaintiff was oriented properly and only mildly impaired regarding attention, concentration, and memory skills. (T. at 796-97.) Dr. Loomis also found Plaintiff capable of following, understanding, and remembering simple instructions, and handling low stress and simple tasks. (T. at 798.)

Furthermore, Dr. Naik's own notes consistently indicate Plaintiff's insight and judgment were within normal limits. (T. at 628, 647, 649, 653, 662, 666, 670, 672.) While he noted her mood was depressed at times, her thought content, thought processing, and orientation appeared normal. *Id.*; *see also* 287, 290. Her behavior was cooperative, and she generally had appropriate hygiene. (T. at 624, 653.) She reported stable functioning to Dr. Naik, and indicated that her medication was effective. (T. at 290, 649, 666, 670.) Dr. Naik prescribed Citalopram and Seroquel. (T. at 644.) Her thoughts were rational. (T. at 653.) Thus, Dr. Naik's opinions are not supported by his own treatment notes. Therefore, the Court finds the ALJ properly weighed the medical opinions of record, and remand is not warranted on this ground.

### 2. Substantial Evidence Supports the ALJ's RFC Determination

Plaintiff argues that the limitations listed in Plaintiff's RFC are not supported by substantial evidence. (Dkt. No. 14 at 10-20.) Specifically, Plaintiff takes issue with the ALJ's findings regarding Plaintiff's social functioning and ability to relate to others, work independently, maintain a routine or schedule, and maintain attention and concentration. For the reasons that follow, the Court finds that the Plaintiff's limitations, as determined by the ALJ, are supported by substantial evidence in the record.

The Court reviews an ALJ's findings of fact under a substantial evidence standard. "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings 'must be given conclusive effect' so long as they are supported by substantial evidence." *Genier*, 606 F.3d at 49 (citing *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982)).

Dr. Vilogi, an internist who also works in emergency medicine, provided a medical source statement from February 10, 2012, which reads, in its entirety: "The claimant should avoid heights and operating heavy machinery or other activity which would put either herself or others in danger."  (T. at 304.)

Dr. Long's medical source statement of February 12, 2012, reads in relevant part:

"[Plaintiff] was able to understand and follow simple directions and instructions to perform simple tasks independently.  She was able to maintain attention and concentration and is able to maintain a regular schedule.  She appears able to learn new tasks.  Regarding complex tasks and making appropriate decisions, there may be limitations.  She is able to relate adequately with others and capable of adequate stress management, but appears to be able to benefit from additional skills in this area.  The results of this examination appear to be consistent with psychiatric problems which may, at times, interfere with her ability to function on a regular basis."

(T. at 298-99.)

State psychologist Blackwell determined Plaintiff's abilities as follows:

"able to understand, execute, and remember simple instructions and work-like procedures. [Plaintiff] can maintain attention and concentration for at least 2 hour intervals. [Plaintiff] is able to sustain a normal workday and work week; and maintain a consistent pace. [Plaintiff] may have difficulty responding to supervisors and coworkers appropriately and may have difficulty in dealing with the public.  The claimant can adapt to changes in a routine work setting and can use judgment to make simple work-related decisions in a low contact setting."

(T. at 322.)

Dr. Loomis examined Plaintiff on February 20, 2013, and found Plaintiff able to participate in work, education and training activities for up to 40 hours weekly with reasonable accommodations.  (T. at 798.)  The reasonable accommodations recommended were "low stress, supportive environment, and working on simple repetitive tasks [which] would more than likely benefit the client."  (T. at 799.)

These medical opinions demonstrate that there is substantial evidence for the ALJ's RFC determination. Dr. Long, Dr. Loomis, and psychologist Blackwell specifically indicated Plaintiff can understand and follow simple instructions. (T. at 298, 322, 798.) Dr. Long went on to state that Plaintiff was able to perform simple tasks independently, and Dr. Vilogi indicated that Plaintiff is able to do household chores independently at least weekly. (T. at 298, 303.) Dr. Long and state psychologist Blackwell specifically said Plaintiff can maintain attention and concentration for simple tasks, and Dr. Loomis noted that working on simple repetitive tasks would likely benefit the Plaintiff. (T. at 298, 322, 799.) The statements of these medical professionals clearly show that Plaintiff is capable of maintaining a normal work schedule. (T. at 298, 322, 798.) Psychologist Blackwell and Dr. Loomis each opined that Plaintiff can handle a low-stress work environment. (T. at 322, 799.)

While the medical opinions conflict as to whether Plaintiff can relate to and interact appropriately with others, there is substantial evidence to support the ALJ's finding that Plaintiff nevertheless retains the ability to do so. For example, Dr. Long opined that Plaintiff "is able to relate adequately to others." (T. at 298.) Plaintiff previously served in a job as a cashier, with no evidence of inappropriate behavior toward others. (T. at 67, 68, 71.) Although Plaintiff admitted to a "terrible temper," the record shows multiple instances where Plaintiff is able to control her temper, especially when she continues to take her medication. (T. at 284, 285, 287, 289, 290, 291.) Taken as a whole, there is substantial evidence to support the ALJ's finding that Plaintiff can interact appropriately with others, and the limitations determined by the ALJ as set forth in Plaintiff's RFC are supported by substantial evidence. For these reasons, remand is not warranted on this ground.

### 3. Assessing the Full Extent of Plaintiff's Seizures

Plaintiff's next argument is that the ALJ erred by failing to assess the full extent of Plaintiff's seizures and headaches and failed to consider third-party testimony to properly determine the RFC. (Dkt. No. 14 at 20.) The Court disagrees and finds that the ALJ properly considered Plaintiff's seizures and headaches, and third party testimony in regard to Plaintiff's mental abilities.

The record clearly shows that Plaintiff has experienced seizures in her life. (T. at 65, 67, 68, 71, 72, 74.) Accordingly, the ALJ found her seizure disorder to be one of Plaintiff's severe impairments. (T. at 16.)

However, the ALJ's ultimate task is to determine whether the seizure disorder prohibits Plaintiff from performing basic work activities. In reviewing this issue, the ALJ noted that Plaintiff's seizures have been managed with medication. (T. at 16-17, 22-23, 302, 801.) Plaintiff herself testified that her grand mal seizures occur "once in a while" since she has taken Tegratol, and her petit mal seizures "aren't as bad as they were" since beginning to take Depakote in 2012. (T. 73-74.) Plaintiff sees her doctor only once a year for follow up regarding her seizures. (T. at 72.) She had not reported a seizure in more than three years until presenting with seizure symptoms in 2012. (T. at 806.) The ALJ made explicit reference to all of these reasons in his report. (T. at 16-17.) Substantial evidence exists in the record to support the ALJ's decision assessing any limiting effects of Plaintiff's seizure disorder and headaches, therefore remand is not warranted on this ground.

Plaintiff also argues that the ALJ erred in not considering the third party testimony of Plaintiff's husband regarding the frequency of seizures. (Dkt. No. 14 at 21.) Plaintiff further

17

asserts that the Commissioner incorrectly failed to consider the third-party report from Plaintiff's husband as required by Social Security Ruling ("SSR") 85-16, 1985 WL 56855 (Jan. 1, 1985). (Dkt. No. 14 at 22.) Plaintiff is incorrect on both grounds.

Under SSR 85-16, the Commissioner is required to consider evidence from third-parties; however the ALJ is not required to give weight to such evidence. SSR 85-16 at *4 ("To arrive at an overall assessment of the effects of mental impairment, relevant, reliable information, obtained from third party sources such as . . . family members . . . *may* be valuable in assessing an individual's level of activities of daily living.") (emphasis supplied). The statement of Plaintiff's boyfriend does not outline any information regarding Plaintiff's seizures. (T. at 242.) The statement of Plaintiff's husband indicates she "goes off in orbit," discussing her "mood" as "frustrated and mad." (T. at 244.) There is no information about the frequency of Plaintiff being in such a "mood." *Id.* The ALJ clearly states in his opinion that the reports from Plaintiff's husband and boyfriend "were considered as part of the overall record" even though they were given "no evidentiary weight." (T. at 22.) The ALJ took appropriate steps to make a reasonable determination based on substantial evidence in the record which, as noted above, indicates Plaintiff is capable of performing basic work activities within the RFC determined by the ALJ. The ALJ articulated that determination adequately. *Id.*

Second, SSR 87-6, 1987 WL 109184 (Jan. 1, 1987) pertains specifically to epilepsy. SSR 87-6. There is no record evidence that Plaintiff has been diagnosed with epilepsy. Nevertheless, as noted above, the ALJ considered the reports from Plaintiff's husband and boyfriend and determined the statements had no evidentiary value. (T. at 22.) Therefore, the ALJ did not err

regarding consideration of third party testimony, especially since there is substantial evidence from medical professionals supporting the RFC articulated by the ALJ.

## B. Vocational Expert

Plaintiff argues that the ALJ erred in relying exclusively on the medical-vocational guidelines and not consulting a vocational expert in making the determination that Plaintiff could perform relevant work. (Dkt. No. 14 at 24.) The Court finds no merit to this argument.

First, the ALJ found Plaintiff was not disabled following his analysis at Step Four, where the ALJ determined Plaintiff could perform past relevant work as a cashier. (T. at 26.) Although not required to do so, the ALJ further proceeded to Step Five and found Plaintiff not disabled because other jobs are available in the national economy that Plaintiff could perform. (T. at 27.) If the ALJ's finding at either step is supported by substantial evidence, then the outcome of the case remains the same and remand is not warranted. Because the ALJ's determination at Step Five was supported by substantial evidence, any error made at Step Four is harmless error. *See Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013).

Generally, the Commissioner meets his burden at the fifth step by resorting to the applicable medical vocational guidelines (the "grids"). *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2). The grids take into account the claimant's residual functional capacity in conjunction with the claimant's age, education, and work experience. *Id*. "Based on these considerations the grids indicate whether the claimant can engage in any substantial gainful work existing in the national economy." *Id*.

"[E]xclusive reliance on the grids is inappropriate where the guidelines fail to describe the full extent of a claimant's physical limitations." *Rosa,* 168 F.3d at 78 (finding the ALJ erred

in applying the grids to deny benefits in a case where it was undisputed that the claimant suffered from nonexertional impairments). "The Grids are inapplicable in cases where the claimant exhibits a significant nonexertional impairment." *Selian v. Astrue*, 708 F.3d 409, 421 (2d Cir. 2013). This is where the nonexertional impairment has more than a negligible impact on a claimant's ability to perform the full range of work. *Id*. (citing *Zabala v. Astrue*, 595 F.3d 402, 411 (2d Cir. 2010)). An impairment is non-negligible when it so narrows a claimant's possible range of work as to deprive her or him of a meaningful employment opportunity. *Id*. (finding that the ALJ erred by not determining whether claimant's reaching limitation was negligible or precluded reliance on the grids).

If a claimant has nonexertional limitations that significantly limit the range of work permitted by his exertional limitations, the ALJ is required to consult with a vocational expert. *Zabala*, 595 F.3d at 410 (citing *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 986) (citations omitted)). A nonexertional limitation is one imposed by the claimant's impairments that affect her ability to meet the requirements of jobs other than strength demands, and includes manipulative impairments such as pain. *Rosa*, 168 F.3d at 78 n.2 (citing *Soblewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997); 20 C.F.R. § 404.1569a(c)). The existence of nonexertional limitations does not automatically preclude reliance on the grids, or require that the ALJ consult a vocational expert. *Id*. Where the claimant's nonexertional limitations did not result in an additional loss of work capacity, an ALJ's use of the grids is permissible. *Id*. at 411.

Here, the ALJ relied exclusively on the grids to make both Step Four and Step Five determinations that Plaintiff was not disabled. (T. at 28.) The Plaintiff's RFC included a limitation that Plaintiff "must avoid workplace hazards such as unprotected heights, moving

mechanical parts, and operating heavy machinery." (T. at 21.) SSR 85-15 provides that "[a] person with seizure disorder who is restricted only from being on unprotected elevations and near dangerous moving machinery is an example of someone whose environmental restriction does not have a significant effect on work that exists at all exertional levels." SSR 85-15, 1985 WL 56857 (Jan. 1, 1985). The Plaintiff's RFC here is essentially identical to the example in SSR 85-15. Therefore, the nonexertional limitations in this case did not have a significant effect on Plaintiff's ability to perform a full range of work and use of the grids was appropriate. Remand is not warranted on this ground.

Finally, the Court has considered the arguments in Plaintiff's reply brief (Dkt. No. 21-1) submitted with permission from the Court (Dkt. No. 22) and finds them to be without merit. The regulations are clear that it is the Commissioner's decision as to when a vocational expert will be consulted. "We will decide whether to use a vocational expert or other specialist." 20 C.F.R. § 404.1566(e). As discussed above, the ALJ's reliance on the grids was appropriate, thus he was not required to consult a vocational expert.

**WHEREFORE,** it is hereby

**ORDERED**, that the Commissioner's decision is **AFFIRMED** and Defendant's motion for judgment on the pleadings is **GRANTED** and the complaint (Dkt. No. 1) is **DISMISSED**.


Dated: August 12, 2015
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge